**FILED**
**Apr 23, 2025**
**11:35 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Julia Havey,** | ) | **Docket No. 2024-60-3630** |
| **Petitioner,** | ) | |
| **v.** | ) | |
| **SageHome, LLC d/b/a New Bath Today,** | ) | **State File No. 38543-2024** |
| | ) | |
| **Respondent,** | ) | |
| **And** | ) | **Judge Kenneth M. Switzer** |
| **American Fire & Cas. Co.,** | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

Julia Havey, who worked as a sales representative for New Bath Today, slipped and fell while carrying heavy sample bags outside a customer's home. New Bath Today did not dispute the event or her injuries but instead raised the defense that Ms. Havey is an independent contractor and therefore ineligible for benefits.

New Bath Today mostly contended that the agreement between them characterizes her as an independent contractor. Ms. Havey countered that the Court should look beyond those words and consider the level of control New Bath Today exerted, which is characteristic of an employer-employee relationship. After an April 16, 2025 hearing, the Court concludes that Ms. Havey is likely to prevail at a hearing on the merits that she was an employee. New Bath Today must offer a panel of physicians.[1]

### Claim History

Ms. Havey began working for New Bath Today in May 2023. She had been looking for "a 1099 job that would give [her] autonomy and freedom," and was less rigorous than

---

[1] Ms. Havey named "New Bath Today" as her employer on the petition, but the dispute certification notice lists the employer as "CC 1 US Holdings, Inc." New Bath Today's counsel clarified at the hearing that CC 1 US Holdings is the parent corporation and SageHome, LLC d/b/a New Bath Today is its subsidiary and the correct respondent.

1

her previous, high-pressure sales job.  A recruiter told her she could "work a lot or a little" to include a four-day work week if she wanted.

This case centers on an agreement she signed when hired.  The 21-page, single-spaced document includes two exhibits and is entitled, "Sales Representative Agreement (Independent Contractor)."  Ms. Havey understood she would be an independent contractor, emphasizing, "I was promised not to be treated like an employee."  Specifically, she wanted to get leads, pursue them at her leisure, and place fewer physical demands on her body than her previous jobs.

Ms. Havey testified that did not happen.  Despite the agreement, New Bath Today treated her as an employee, mostly by controlling her work in several ways.

The job began with two weeks of required onsite intensive training in Indiana.  Ms. Havey was not reimbursed for her mileage driving there and back.  New Bath Today fronted her lodging but later took $1,000 from her pay as reimbursement.  It provided sandwiches and snacks during the day and a per diem for other meals.

At training, New Bath Today loaded software and an app, which she had to purchase and pay a monthly fee to use, onto Ms. Havey's personal tablet computer.  She was required to use her own mobile phone.  Training consisted mostly of memorizing a lengthy "timeline," or six-page script, for required use when making sales calls.  They were to recite the script verbatim, but some customization was permitted with the company's approval.  Training culminated with "graduation," after Ms. Havey performed the script for management.  Ms. Havey was then given business cards with the New Bath Today logo identifying her as a "design consultant."  The cards gave her phone number along with the number of New Bath Today's corporate office.  Ms. Havey also received marketing materials and New Bath Today branded bags for carrying samples to sales calls.

Once she was on the job, the daily procedure kicked in.  Ms. Havey would check the app the night before a workday, which would give her leads.  Ms. Havey was free to also find her own leads, too.  The leads consisted of appointments at either 10:00 a.m., 2:00 p.m., or 6:00 p.m. at a prospective customer's home.  For example, one day she had appointments in Greenville, Kentucky; Goodlettsville; and then Spring Hill.  This was a 15-hour day, she said.  Ms. Havey said she was not free to alter these appointment times and had no way to directly contact the customers before they met.

Ms. Havey testified that some days she would have three appointments, and other times she would go for "weeks" without a single appointment.  Whenever she had no appointments, she was required to be on "standby" and available to attend any last-minute appointments that New Bath Today might set.  This meant she had to stay home while standing by. When Ms. Havey requested to work Mondays through Thursdays, she received negative feedback from the company, including threats of termination.

2

In addition to making sales calls, Ms. Havey testified that approximately six times over the course of her ten months' work for New Bath Today, she had to attend follow-up, two-hour "trainings" whenever New Bath Today changed lenders to learn the new criteria.

Ms. Havey agreed that the agreement did not give her a quota, but the pressure to sell was intense, nonetheless. New Bath Today required her to attend weekly Monday meetings. The purpose of the meeting was to "incentivize" staff by discussing a 30% sales goal and recapping who sold the most the previous week. Her direct supervisor, Matthew Melton, "frequently admonished" her if she did not reach the 30% goal. He also told her she could be "taken off the schedule"—in effect fired—for not selling enough. She said, "It was the most grueling sales environment I've ever been in."

Ms. Havey testified that she asked whether attendance was mandatory at the Monday meetings, and a corporate supervisor, Mike Rouser, told her that nonattendance was "unacceptable." In addition, Mr. Melton sent a text that "[y]our job is to be on a company call once a week for 8am. If you think that's too much to ask, then you can work elsewhere."

New Bath Today required Ms. Havey to be accessible and responsive during work hours. She offered a group text from Mr. Melton saying, "From 8am your time zone to 4pm, if someone calls you like myself, Mike R, call center, or anyone from corporate, there is no option to not immediately return that call or message unless you're in a meeting in [sic] or some emergency."

As for compensation, the agreement states that Ms. Havey would earn a up to a 35% commission on all sales. She received commission only and no salary, and no taxes were withheld. She received a 1099. Ms. Havey said she never received the full 35% commission on any sale; "costs" were frequently deducted. More often she earned 6-8%. For example, on a sale of $19,300, she earned a commission of 2.79%, or $538.52. Mr. Melton earned the same on that sale.

Commissions were split 50/50, Ms. Havey explained, when a supervisor attended a presentation, "ran the appointment," and made the sale, while she observed and assisted. The sales representative could alternatively ask to take the lead. The supervisor visits were unscheduled; sometimes she would arrive at a home and see her supervisor's vehicle. Other times, she knew he would be attending. A supervisor attended three appointments during her time with New Bath Today.

Ms. Havey did not hire helpers, despite the agreement giving her that right. She explained that she would have been unable to allow a helper access to the app or sales software. She further testified that she never heard of anyone's "team" making a sale, but

rather it was always an individual. She conceded, however, that she did not know for certain if no other sales representative had helpers.

Ms. Havey did not work for other entities during her tenure at New Bath Today. She stated that, between being on standby or attending appointments, she had no time to seek other employment.

As to the accident, Ms. Havey testified that on March 6, 2024, she slipped on a customer's sidewalk while carrying the bag of sales materials weighing approximately 45 pounds. She injured her right ankle, left hip and shoulder, and low back. That night, she mentioned her fall in a group text with other sales representatives, adding that the company did not provide workers' compensation. In response, an area sales manager, "Danielle," wrote, "That's because you are a 1099. You are your own business."

Ms. Havey took a week off after the fall and agreed that New Bath Today permitted that and other time off that she had previously requested. For example, after her father's death, she took six weeks off. New Bath Today allowed that, although she testified that Mr. Melton repeatedly told her once she returned that she was "lucky" her father had died or she would have been terminated.

Ms. Havey filed her petition on May 23, 2024, and New Bath Today denied the claim on July 16. She testified that New Bath Today placed "exacting controls, demands of my time, and unagreed to expectations" on her, to a level where she was an employee and not an independent contractor. She said she will need shoulder surgery and suffers "constant pain," but the only admissible medical record she offered was a one-page result from a shoulder MRI. New Bath Today later terminated Ms. Havey, and she has not worked since. She requested a panel of physicians and temporary disability benefits.

New Bath Today's proof was an affidavit from Jason Bisch, its senior vice-president. Mr. Bisch did not testify about his knowledge of Ms. Havey's tenure with the company or the accident. Rather, the affidavit mostly restates key portions of the agreement between New Bath Today and Ms. Havey, with Mr. Bisch concluding, "The Agreement demonstrates that the intention of New Bath Today and Julia Havey was that Julia Havey would be an independent contractor and not a W2 Employee."

The agreement states in relevant part:

- The company and sales representative "acknowledge[] and agree[] that the Sales Representative . . is a 'direct seller'" as defined by the Internal Revenue Code and therefore "will not be treated as an employee . . . for employment tax purposes."
- "The Company shall have no duty to supervise the work of the Sales Representative" or their employees or independent contractors, and the company

"expressly disclaims any duty, express or implied, to supervise the work of Sales Representative or safety of its employees and independent contractors."

New Bath Today principally argued that under the signed agreement, Ms. Havey is an independent contractor. But also, in practice, she was free to hire helpers, pursue her own leads or other work, and quit at any time. Moreover, she could and did ask for time off, which New Bath Today permitted, and she used her own tablet, phone, and purchased software.

## Law and Analysis

To support an order for benefits, Ms. Havey has the burden of presenting sufficient evidence from which the trial court could conclude she is likely to prevail at trial in proving she is eligible to seek benefits. *Hernandez v. Master Stucco,* 2023 TN Wrk. Comp. App. Bd. LEXIS 30, at *9 (July 6, 2023).

### *Employee or independent contractor*

The threshold issue is whether she was an employee or independent contractor. The analysis begins with the factors listed in Tennessee Code Annotated section 50-6-102(10)(D)(i) (2024). They are: (a) the right of control over the conduct of the work; (b) the right of termination; (c) the method of payment; (d) the freedom to select and hire helpers; (e) the furnishing of tools and equipment; (f) self-scheduling of work hours; and (g) the freedom to offer services to other entities. While no single factor is determinative, "the Tennessee Supreme Court has repeatedly emphasized the importance of the right to control the conduct of the work." *Id.* at *8-9.

New Bath Today's denial relied largely upon the lengthy written agreement between the parties. Its sole witness was a declarant/senior vice-president, Mr. Bisch, who merely restated the agreement's terms in his testimony and concluded that the parties' "intention" was for Ms. Havey to work as an independent contractor. He gave no testimony about the particulars of Ms. Havey's relationship with the company, and the Court cannot discern if he even knew her or has any knowledge about her individual claim.

The Court affords little weight to his declaration, since he was not subject to cross-examination. But more importantly, "Tennessee law is clear that the intent of the parties is not dispositive on this issue." *Thompson v. Concrete Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *16 (Feb. 10, 2015). In addition, "the designation given by the parties in their contract does not dictate the applicability of the Workers' Compensation Law. Our Supreme Court has stated that 'a contract purporting to establish the plaintiff as an independent contractor is insufficient when the facts surrounding the arrangement indicate [otherwise]." *Id.* at *16-17 (Citation omitted).

More recently in *Hernandez,* the Appeals Board cited longstanding law that:

> It is the duty of the court to determine if a worker is an employee or independent contractor, and the employer cannot use a contract to take that responsibility from the court. The Workers' Compensation Act similarly prohibits the use by an employer of any 'contract or agreement, written or implied, or rule, regulation or other device' to evade its workers' compensation obligations.

*Hernandez,* 2023 TN Wrk. Comp. App. Bd. LEXIS 30 at *14-15 (citing Tenn. Code Ann. § 50-6-114(a)).

Therefore, the Court will perform its duty to apply the factors above to the facts of this case and will not be bound solely by the terms of the written agreement—one that, arguably, seeks to evade the Workers' Compensation Law.

For starters, Ms. Havey emphasized without rebuttal that New Bath Today exerted significant control over her work. They set her appointments, scripted her sales presentations, and required her to attend weekly meetings and trainings approximately every six weeks. New Bath Today also demanded immediate responsiveness to all communications during business hours and that she "stand by" when appointments were unavailable. In addition, her supervisor occasionally attended her appointments, with or without notice, to evaluate her technique and essentially take part of her commission.

Ms. Havey's testimony was credible and unrefuted, and she did not waver on rigorous cross-examination. Therefore, the Court agrees that New Bath Today closely controlled her work activities. This factor favors a finding that Ms. Havey was an employee.

As to the right of termination, either party could have exercised this at any time. The Appeals Board in *Hernandez* reminded, "The power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor." *Id.* at *15. Therefore, this factor favors employee status.

Regarding the method of payment, Ms. Havey was compensated by commissions only and not a regular salary, which seems customary for sales work. The payments did not withhold taxes or other deductions. However, "[t]he fact that a company did not deduct Social Security or income taxes "is not a controlling factor in deciding whether an employer-employee relationship existed." *Id.* at *9. This factor favors neither party.

The next factor, the freedom to select and hire helpers, favors Ms. Havey as an employee. Although the agreement permitted this, Ms. Havey testified that she knew of

no other New Bath Today sales representative who had helpers, and that during meetings, New Bath Today never referred to anyone's "team" but rather all sales representatives were lone individuals. She conceded that possibly a seller exists who has helpers. But she also pointed out the difficulty that any helper would encounter: an inability to access the proprietary software that New Bath Today required for getting appointments and for making sales presentations. New Bath Today offered no contrary evidence, including proof of the existence of any "teams." Thus, the Court agrees that this "right," while mentioned in the agreement, would be difficult to exercise.

As to the furnishing of tools and equipment, this factor favors neither. New Bath Today provided the marketing materials, business cards, samples, and branded bags. It also loaded Ms. Havey's personal tablet computer with an app and software for use during sales presentations. She used her personal phone for ascertaining her appointments and communicating with other sales reps and her supervisors. Therefore, both parties furnished the necessary tools to do the job, to varying extents.

As to self-scheduling of work hours, as previously mentioned, New Bath Today required constant access to Ms. Havey between 8:00 a.m. to 4:00 p.m., four days per week. She had no say in scheduling the appointments and had to be on standby when none were available. New Bath Today stressed that it occasionally permitted her time off when she requested it as proof of self-scheduling. However, Mr. Melton spoke of Ms. Havey's "luck" that her father died as the reason she was not terminated for taking an extended break. Regardless, allowing this occasional time off (unpaid) pales in comparison to New Bath Today's constant scheduling demands and scrutiny during the time Ms. Havey did work. This factor favors a finding of Ms. Havey as an employee.

Finally, regarding the freedom to offer services to other entities, Ms. Havey testified that, given the full-time accessibility New Bath Today required, she had no opportunity to do so. In *Thompsen,* the same held true: both parties agreed that the claimant was free to offer his services to other companies, though the claimant testified that, as a practical matter, the demands of his job made it impractical to work elsewhere. The Board held that this statutory factor "tend[ed] to support a finding that the claimant was an independent contractor." *Thompsen,* 2015 TN Wrk. Comp. App. Bd. LEXIS 3 at *21. This factor favors an independent contractor finding.

In sum, considering all seven factors, the last is the only one favoring New Bath Today's position. A couple of the factors are neutral. But most of the factors favor a finding that Ms. Havey was an employee.

Therefore, the Court holds Ms. Havey met her burden. She is likely to prevail at a hearing on the merits that she was New Bath Today's employee and is entitled to benefits.

*Benefits and Compliance Referrals*

Tennessee Code Annotated section 50-6-204(a)(1)(A) states that an employer shall furnish, free of charge to the employee, medical treatment made reasonably necessary by the work-related accident. The statute further requires that an employer offer a panel of three or more physicians, from which an employee may select one to evaluate and treat the injury. § 50-6-204(a)(3)(A)(i). Given Ms. Havey's testimony regarding the nature of her alleged injuries, New Bath Today shall promptly provide her a panel of orthopedic specialists.

Ms. Havey also requested temporary disability benefits. To receive temporary total disability benefits, an employee must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Here, Ms. Havey did not introduce complete medical records to satisfy these requirements, so her request for temporary disability benefits is denied at this time. She may obtain this evidence and renew her request at a later expedited hearing or the compensation hearing.

Along these lines, neither party offered a wage statement or other proof of Ms. Havey's earnings for the 52 weeks before her injury from which the Court could determine her compensation rate.

New Bath Today is reminded that Tennessee Compilation Rules and Regulations 0800-02-21-.10(6) (2023) states, "Within seven (7) business days after the request of the mediator or within fifteen (15) calendar days after a dispute certification notice is filed with the clerk, the employer must provide a wage statement on a form approved by the Administrator detailing the employee's wages over the fifty-two (52) weeks before the injury." Because New Bath Today did not file a wage statement, the Court refers it to the Compliance Program for investigation as to whether a penalty is appropriate.

Similarly, on this record, Ms. Havey filed her petition for benefit determination on May 23, 2024, but New Bath Today did not deny the claim until July 16. Tennessee Compilation Rules and Regulations 0800-02-14-.04(6) (2022) provides, "Decisions on compensability shall be made by the adjusting entity within fifteen (15) calendar days of the verbal or written notice of injury." New Bath Today's compensability decision was untimely. The Compliance Program shall consider this for a potential penalty as well.

IT IS, THEREFORE, ORDERED AS FOLLOWS:

1. New Bath Today shall promptly offer a panel of orthopedic specialists for evaluation and any reasonable and necessary treatment of Ms. Havey's alleged injuries from the March 6, 2023 fall.

2. New Bath Today shall file a wage statement within ten business days of entry of this order.

3. Ms. Havey's request for temporary disability benefits is denied currently.

4. A status hearing is set on **July 28 at 10:00 a.m. Central Time.** You must call (615) 532-9552 or (866) 943-0025 to participate.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED April 23, 2025.**


*Kenneth M. Switzer*
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Declaration of Julia Havey; no attachments except as listed below
2. Affidavit of Jason Bisch and attachments
3. MRI-Shoulder, July 29, 2024
4. Notice of Denial
5. Timeline (script-customized)
6. SageHome Sales Representative Agreement-Amended
7. Indeed job advertisement-Identification only
8. Screenshots, New Bath Today app
9. Text messages from Matthew Melton and Mike Rouser
10. Business card
11. Text messages from Matthew Melton
12. Letter from John Higgins to Ms. Havey and attachment
13. Group text messages
14. Email from adjuster to Ms. Havey
15. Payments from CC 1 US Holdings

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on April 23, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Julia Havey, employee | | X | X | juliagriggshavey@yahoo.com 5560 Hwy 41A Joelton TN 37080 |
| Emily Pfeiffer, employer's attorney | | | X | Emily.Pfeiffer@Libertymutual.com Rachel.Dornier@Libertymutual.com |
| Compliance Program | | | X | WCCompliance.Program@tn.gov |

_____
Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*